# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LANCE PAYTON, | ) |
| Movant, | ) |
| | ) No. 2:14CV33-PPS |
| v. | ) |
| | ) Arising from No. 2:11CR106-PPS |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## **OPINION AND ORDER**

In August of 2012, Lance Payton pled guilty in this court to one count of being a felon unlawfully in possession of a firearm. [DE 22.] He was sentenced in January 2013 to 100 months in prison. [DE 37.] He now challenges that sentence in a Motion to Vacate, Set Aside or Correct Sentence brought under 28 U.S.C. §2255. [DE 56.] Payton offers four grounds for relief from his sentence. The first is a claim of ineffective assistance of counsel relating to the manner in which mitigating circumstances were argued at sentencing. Second, he claims that at sentencing I failed to treat the United States Sentencing Guidelines as advisory and failed to adequately consider the required sentencing factors under 18 U.S.C. §3553(a). Ground Three argues that Payton's counsel was constitutionally ineffective in failing to challenge the use of Payton's Indiana conviction of Intimidation as a "crime of violence" to increase his base offense level under §2K2.1 of the Guidelines. Finally, Ground Four is a claim that ineffective assistance of counsel resulted in Payton's unknowingly and involuntarily entering into

a waiver of his rights to appeal and make collateral challenges to his conviction or sentence.

The threshold issue is the government's invocation of that waiver as requiring the denial and dismissal of Payton's motion under §2255. In the plea agreement, Payton made the following concession:

> I expressly waive my right to appeal or to contest my conviction and my sentence imposed or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceedings, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

[DE 18 at 4.] These types of appeal waivers are enforceable when the guilty plea is knowingly and voluntarily made. *United States v. Gonzalez*, 765 F.3d 732, 741 (7th Cir. 2014) (the appeal waiver stands or falls with the guilty plea itself); *United States v. Alcala*, 678 F.3d 574 (7th Cir. 2012).

In determining whether such a waiver is enforceable, the Court of Appeals examines the plea colloquy for substantial compliance with Rule 11 of the Federal Rules of Criminal Procedure, to ensure that the district judge adequately explained "the nature of the charge, the statutory penalties, the role of the sentencing guidelines and the judge's discretion in applying them, the process for receiving credit for acceptance of responsibility and cooperation with the government, and the trial and appellate rights [the defendant] was waiving by entering the plea," as well as ensured that

"neither the government nor counsel [was] forcing him to plead guilty or assuring a specific sentence." *United States v. Zitt*, 714 F.3d 511, 515 (7th Cir. 2013). "We rely on the record of the colloquy because it is conducted under oath and has a 'presumption of verity.'" *Gonzalez*, 765 F.3d at 741, quoting *United States v. Adams*, 746 F.3d 734, 746 (7th Cir. 2014).

So first I examine the transcript of the plea hearing [DE 50], to determine whether the guilty plea, and the appeal waiver contained within it, meet this standard. Defendant told me he wanted to plead guilty and was put under oath. [*Id.* at 5-6.] Payton was 34 years old and had been enrolled in college. [*Id.* at 6.] While in jail, he had been involved in drug counseling and mental health treatment, which he said had "helped [him] a great deal," and he affirmed that he was "able to meaningfully communicate with [counsel] about the case and to talk about it and devise a strategy" for himself. [*Id.*] I then went through the plea agreement with him in some detail to assure his understanding of it. [*Id.* at 9.]

The offense charged, the penalties, the Guidelines and the parties' agreements about their application, the related agreement with the Lake County prosecutor, and the appeal waiver were all reviewed, with particular emphasis on Payton's understanding of the plea agreement and the voluntariness of his decision to enter into it and plead guilty to the charge. [*Id.* at 9-16.] The appeal waiver was given special attention, and I explained its significance in plain language and received Payton's assurance that he understood he would be unable to appeal to a higher court or come back to this court to

3

attack his conviction, with very few exceptions. [*Id*. at 13-14.] Payton repeatedly reaffirmed that he understood. [*Id.*] On this record, I would readily conclude that the plea agreement and its appeal waiver are binding on Payton and enforceable, unless Payton demonstrates that counsel's ineffectiveness somehow resulted in the waiver.

Payton's waiver had an express exception for claims of ineffective assistance of counsel relating to the waiver itself or its negotiation. This merely reflects the legal limits of such waivers as repeatedly noted by the Seventh Circuit. *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013) ("We have...repeatedly recognized that appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement.") Payton's Ground Four is therefore excepted from the waiver.

What does Payton actually argue in Ground Four? In his §2255 motion, Payton "admits that his counsel noted the existence [of the] waivers and that the district court noted the existence of the waiver and gave some explanation as to the meaning of the waiver." [DE 56 at 8.] He goes on to acknowledge that his own "statements at the plea hearing were truthful, and Mr. Payton believed that after the district court explained the waiver, he understood the meaning of the appeal waiver." [*Id.*] Somewhat inexplicably then, Payton proceeds to contend that "after sentencing and after his appeal was dismissed,[1] Mr. Payton understood for the first time that the waiver meant that, even if

---

[1] After sentencing, Payton's counsel filed a notice of appeal, but Payton later voluntarily dismissed the appeal, acting *pro se*. [DE 48-1 at 1.]

the sentence were incorrectly calculated, he may not be permitted to file action to address that error – that he would be stuck with an incorrectly-calculated sentence." [*Id.*]

Payton offers no explanation for his previous lack of understanding, which is particularly incredible after he acknowledged at the plea hearing that if he was unhappy or disagreed with something that I did, he would be "stuck with those decisions" and was "not going to be able to appeal them to a higher court." [DE 50 at 13.] Furthermore, as stated in the motion itself, Ground Four offers no alleged fault or failure of counsel that could in some way be responsible for Payton's claimed lack of understanding. Neither does Payton's later-filed memorandum in support of his motion. [DE 59.] There again, Payton merely summarily claims that he "entered into the appeal waiver unknowingly and unintelligently as a result of ineffective assistance of counsel," without articulating what counsel did or didn't do that deprived Payton of the necessary understanding of the plea waiver. [DE 59 at 1.] Incredibly, in his memorandum Payton makes a bald claim that he "was unaware either of the existence of the appeal waiver or the nature and consequences of the waiver." [*Id.*] This is demonstrably false, given the record of my review and explanation of the waiver at the plea hearing, and also contradicts Payton's own statement of Ground Four in the §2255 motion, where he acknowledged discussion of the waiver with both his counsel and me.

To demonstrate ineffective assistance of counsel, Payton must show that his attorney's performance was deficient as a matter of constitutional law and that he was

prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A constitutionally deficient performance is one that falls "outside the wide range of professionally competent assistance." *Id*. at 690. A defendant is prejudiced by deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A defendant who was convicted on a guilty plea must show that, but for his attorney's alleged errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Payton never identifies how his attorney's shortcomings deprived him of the necessary understanding of the appeal waiver. Any claim that his counsel never even mentioned the waiver to him is defeated by the contrary facts stated by Payton in Ground Four itself: " Mr. Payton admits that his counsel noted the existence [of the] waivers." [DE 56 at 8.] I also consider the fact that the waiver is in writing in the plea agreement Payton signed, and which he told me (under oath) that he fully understood and signed indicating his "acceptance and agreement to every term and phrase." [DE 50 at 15.] Even if I credit his nebulous claim that his attorney failed to adequately apprise him of the appeal waiver and its impact, Payton cannot demonstrate prejudice because the waiver was fully explained to him at the plea hearing and he went ahead with his guilty plea. Payton's ineffective assistance claim is unsupported and without merit, and fails to establish either that counsel's performance was deficient or that

Payton lacked the necessary awareness of the plea's consequences. I remain persuaded that the plea and the appeal waiver were knowingly and intelligently made.

In his treatment of Ground Four, Payton also makes generalized references to his "mental" or "medical" issues. [DE 56 at 8; DE 59 at 7.] These issues are not further explained and no argument about their significance is offered. Any claim now that his mental health rendered Payton unable to understand the import of the plea waiver is distinct from the limited type of ineffective assistance of counsel claim that survives his appeal waiver, and is precluded by the waiver. In any event, both counsel and I were aware of Payton's mental health history. The psychological examination performed in this case found Payton to have no difficulties with concentration or attention, to have logical and well-organized thought processes, and to have good judgment and insight. [DE 30-1 at 7.] The examiner also concluded that Payton was "feigning psychopathology" and malingering mental health symptoms. [*Id.* at 8.] Payton presents no viable claim that he was mentally incapable of understanding the plea waiver he agreed to.

I have treated Ground Four of Payton's §2255 as within the exception to his waiver of the right to bring collateral challenges to his sentence. But the claim itself – that his counsel rendered ineffective assistance resulting in Payton's failure to make a knowing and voluntary appeal waiver – is rejected on its merits.

Even though the waiver does not apply to Ground Four of his petition, the waiver does preclude his three other grounds for relief because they do not relate to a

7

claim concerning the negotiation of the waiver. *See Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Because the ineffective assistance claims concerning mitigation arguments and the Guidelines offense level computation do not fall within the waiver's narrow exception, they are barred by Payton's waiver, as is the claim that I failed to treat the Guidelines as advisory and neglected the pertinent §3553(a) factors. Grounds One, Two and Three will therefore be denied on the basis of Payton's waiver.

But in all events, even if I were to treat these grounds for relief on their merits, I would readily reject each of them. Counsel effectively presented at sentencing every mitigating factor for my consideration, and gave special attention to Payton's mental health history, of which I was well aware given the psychiatric evaluation Payton had undergone in this case. Defense counsel also appropriately highlighted Payton's physical problems, disability, military service, educational difficulties, troubled childhood, and family responsibilities. *See* Sentencing Memorandum, DE 34 at pp. 3-8. Payton demonstrates no right to relief on Ground One. Ground Two is similarly unpersuasive, as I made abundantly clear at sentencing that I understood that the Sentencing Guidelines are merely advisory and that in determining Payton's sentence I had taken into consideration all the applicable sentencing factors under 18 U.S.C. §3553(a) to arrive at the term of imprisonment I concluded was sufficient but not greater than necessary to serve the statutory purposes.

Ground Three is also without merit. Payton's conviction of Intimidation, a Class D felony under Indiana law, was properly classified as a crime of violence within the

meaning of U.S.S.G. §4B1.2(a)(1) because it had an element of the threatened use of physical force.[2] Applying the modified categorical approach to the divisible statute, the record discloses that Payton was convicted on a charge of threatening to commit a forcible felony under I.C. §35-45-2-1(a)(1), (b)(1)(A) and (c)(3). This distinguishes the conviction from the one found not to qualify as a violent felony in *United States v. Ellis*, 622 F.3d 784, (7th Cir. 2010), in which the Indiana Class D Intimidation conviction was based on §35-45-2-1(a)(2), (b)(1)(B)(i) and (c)(1). Deciphering this alphabetical jumble, the conviction in *Ellis* was for a retaliatory threat to *unlawfully injure* a law enforcement officer, whereas Payton was convicted of a threat to *commit a forcible felony* to coerce the victim to engage in conduct against her will. The threatened use of physical force was an element of Payton's crime, whereas the Seventh Circuit found it was missing from the elements of the offense in *Ellis*. *Id*. at 800. For these reasons, even if this issue had not been waived, Payton's ineffective assistance claim concerning the classification of his Intimidation conviction would not succeed because he can demonstrate neither of the requirements of such a claim -- deficient performance by his counsel nor any prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

ACCORDINGLY:

---

[2] Payton's argument concerns the analysis of the Intimidation conviction under the "physical force as an element" clause of the "crime of violence" definition. [DE 56 at 7; DE 59 at 27.] The issue does not involve the so-called "residual clause" of the definition or the Supreme Court's recent decision in *Johnson v. United States*, 135 S.Ct. 2551 (June 26, 2015), finding the residual clause in analogous statutory language to be void for vagueness.

Lance Payton's Motion to Vacate, Set Aside or Correct Sentence [DE 56] is DENIED.

SO ORDERED.

ENTERED: September 9, 2015.

                                                  /s/ Philip P. Simon
                                                  PHILIP P. SIMON, CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT